United States Court of Appeals

For the Eighth Circuit

_____

No. 21-3009
_____

Anthony Slayden

*Plaintiff - Appellant*

v.

Center for Behavioral Medicine

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 20, 2022
Filed: November 17, 2022
_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Anthony Slayden worked as a security officer at the Center for Behavioral Medicine (CBM). Slayden sued CBM, alleging a racially hostile environment, disparate treatment based on race, retaliation, and constructive discharge in violation

of the Missouri Human Rights Act (MHRA) and Title VII of the Civil Rights Act of 1964. The district court[1] granted summary judgment to CBM, and we affirm.

I.

Slayden worked as a security officer at CBM for around 21 years before he resigned in December 2019. On August 9, 2018, Slayden filed a grievance with CBM's Human Resources department about his supervisor Mike Seward's alleged harassment. HR had an investigator look into Slayden's grievance and found his complaints unsubstantiated.

On July 24, 2019, Slayden filed charges with the Missouri Commission on Human Rights (MCHR) and the EEOC. The description attached to the EEOC charge listed specific incidents of Seward's harassment only until August 10, 2018. Although the charge indicated that the discrimination was a "continuing action," and listed October 16, 2018, as the latest date of discrimination, the description merely stated that HR decided Slayden's internal grievance was unsubstantiated on October 16, 2018. Slayden then filed this lawsuit, alleging a racially hostile work environment, disparate treatment based on race, and retaliation, all in violation of the MHRA, Mo. Rev. Stat. § 213.010 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.* Slayden also argued that he was constructively discharged.

Slayden testified that Seward was the only person who discriminated against him, and that Seward did nothing that Slayden considered retaliatory, discriminatory, or harassing after Slayden filed his grievance with HR on August 9, 2018. After filing the grievance, Slayden actively avoided Seward by leaving work by the back door. Slayden also testified to three incidents that he considered retaliation by HR, all of which happened in mid-to-late 2019: (1) a letter he received falsely stating that he requested leave without pay; (2) a written or verbal

---

[1]The Honorable Gary A. Fenner, Senior United States District Judge for the Western District of Missouri.

communication about something that Slayden can't specifically recall; and (3) not allowing Slayden to come to work for two weeks while he recovered from finger surgery when his doctor said he could work on light duty.

The district court granted summary judgment to CBM, finding that Slayden's hostile work environment and disparate treatment claims were time-barred and that Slayden failed to exhaust administrative remedies for his retaliation claims. It also held that, to the extent that Slayden reframed his claims as a constructive discharge claim, he did not exhaust it.

## II.

"We review a district court's decision to grant summary judgment *de novo*." *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 936 (8th Cir. 2019). "Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *LeBlanc v. McDonough*, 39 F.4th 1071, 1075 (8th Cir. 2022) (citation omitted).

## A.

Slayden first argues that his hostile work environment and discrimination claims are not time-barred. Under the MHRA, a person must first file a charge with the MCHR within 180 days of the alleged discriminatory act. Mo. Rev. Stat. § 213.075.1. Under Title VII, someone who first files with a state or local agency (like the MCHR) must file their charge with the EEOC within 300 days of the alleged act. 42 U.S.C. § 2000e-5(e)(1). Slayden filed his charge with both the MCHR and the EEOC on July 24, 2019. To be timely, his MHRA claims must have arisen after January 25, 2019, and his Title VII claims after September 27, 2018.[2] Because a hostile work environment consists of a series of separate acts, Slayden only needed

_____

[2]Slayden does not appear to challenge judgment on his MHRA claims. Regardless, the MHRA's statutory period is shorter than Title VII's so the same analysis applies.

to file his charge within 300 days of at least one act that is part of the hostile work environment.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117–18 (2002).

Slayden insists that he filed his claim within 300 days of at least one act of harassment.  He argues that his need to avoid Seward after filing the grievance was a result of Seward's "discriminatory animus," and that he was continually harassed until Seward resigned in mid-2019.  This contradicts the record.  Slayden testified that Seward was the only person who discriminated against him, and that Seward did nothing that Slayden considered retaliatory, discriminatory, or harassing after Slayden filed his grievance with HR on August 9, 2018.  Slayden further argues that CBM did nothing to remedy the harassment, and that the failure to take appropriate remedial action constitutes discrimination.[3]  Yet HR had Slayden's grievance investigated and found it unsubstantiated.

Last, Slayden argues that HR continued the harassment by threatening discipline, disciplining him, and giving him baseless write-ups.  Although Slayden testified that "after [Seward] left, human resources continued with the harassment or false allegations," nothing in the record supports an inference that any of HR's actions constituted harassment based on Slayden's race.  *See Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.") (citation omitted) (cleaned up).

Slayden's hostile work environment and discrimination claims are time-barred.

---

[3]Slayden relies on *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) to make this argument.  *Faragher* concerned an employer's vicarious liability for a hostile work environment where it had failed to exercise reasonable care to prevent harassment; it does not support the notion that failure to take remedial action is itself discrimination.  *See id.* at 807–09.

B.

Slayden next argues that he exhausted his retaliation and constructive discharge claims. "The exhaustion requirement may be satisfied if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge, but the civil suit can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Fanning v. Potter*, 614 F.3d 845, 852–53 (8th Cir. 2010) (citation omitted) (cleaned up); *see also EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992). He argues that the EEOC charge covered these claims because they are like or related to the substance of the charge.

i.

While Slayden argues that his retaliation claims are like or related to the substance of his EEOC charge, he doesn't address how they are related. We may consider this argument waived. *See Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005) ("To be reviewable, an issue must be presented in the brief with some specificity. Failure to do so can result in waiver.").

Slayden's argument fails on the merits too. Slayden testified to three occasions he considered retaliation by HR, all of which occurred in mid-to-late 2019. But the charge's only references to HR's actions were about the finding that Slayden's August 2018 grievance was unsubstantiated and HR's failure to provide a grievance or complaint form when Slayden asked for one. Slayden never claimed that either action was retaliatory. And none of allegedly retaliatory actions he did testify to are "like or related to the substance of the allegations in the charge," nor can they be "reasonably . . . expected to grow out of the investigation triggered by the charge." *Delight Wholesale Co.*, 973 F.2d at 668. "[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims." *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688–89 (8th Cir. 1998) (plaintiff had not exhausted his retaliation claim when he claimed the retaliation was in response

to internal discrimination complaints because he failed to allege retaliation in his EEOC charge).

Slayden's charge described Seward's allegedly discriminatory actions, not HR's. Slayden also filed his EEOC charge almost a year after filing his August 2018 grievance, yet the charge didn't indicate that he had any issues with HR after it found the grievance unsubstantiated. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222–23 (8th Cir. 1994) (plaintiff had not exhausted her race discrimination claims because her EEOC charge "failed to allege any facts in the narrative section of her charge which raise the issue of race discrimination," and the charge "[did] not even hint of a claim of race discrimination"); *see also Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080–81 (8th Cir. 2021) ("It is not reasonable to expect the investigating agency to look for and investigate discrete adverse employment actions if they are nowhere mentioned in the administrative charge.") (citation omitted) (cleaned up). Because Slayden did not allege retaliation by HR in his charge, he has not exhausted his retaliation claims.[4]

ii.

Slayden has not exhausted his constructive discharge claim either. "A constructive discharge is a discrete act of discrimination or retaliation that stands separate and distinct from the continuing violation of a hostile work environment." *Henson*, 3 F.4th at 1081. In *Henson*,[5] we found that a plaintiff's constructive

---

[4]The fact that Slayden checked a box for "retaliation" on his charge is not enough to overcome the fact that his charge describes no retaliation by HR. *Cf. Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (simply checking the "sex discrimination" box on the charge form and making a conclusory allegation, as opposed to particularized account, did not establish a reasonable relationship between the facts alleged in the charge and a sex discrimination claim), *overruled in part on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

[5]Although *Henson* was decided under the MHRA, we relied on Supreme Court and Eighth Circuit authority because "in deciding a case under the MHRA, state appellate courts are guided by both Missouri law and federal employment

discharge claim was not reasonably related to his charge allegations where the charge did not assert that he had been or was about to be constructively discharged and where the alleged constructive discharge did not occur until approximately nine months after his charge had been filed. *Id.* at 1082. Here, Slayden's charge gave no indication that he was about to be constructively discharged, and Slayden did not resign from CBM until approximately five months after he filed his charge. As we've made clear, "the civil suit can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *See Fanning*, 614 F.3d at 852–53. Because a constructive discharge could not have been reasonably expected to result from Slayden's initial EEOC charge, Slayden has not exhausted his constructive discharge claim.[6]

III.

We affirm the district court's grant of summary judgment.

_____

_____

discrimination caselaw that is consistent with Missouri law." *Henson*, 3 F.4th at 1081 (quoting *Lin v. Ellis*, 594 S.W.3d 238, 242 (Mo. 2020) (en banc)) (cleaned up).

[6]Slayden's reliance on *Green v. Brennan*, 578 U.S. 547 (2016), is misplaced. In *Green*, the Court found that because actual resignation is an element of a constructive discharge claim, the filing period for the claim begins to run only after the employee actually resigns. *Id.* at 555–56. Slayden argues that because discriminatory conduct is an element of a constructive discharge claim, "the natural progression to discharge is like or similar to the events that form the basis for the charge and the parameters of the investigation." Slayden Br. 42. *Green* dealt with a constructive discharge claim's filing period and not the exhaustion of constructive discharge claims. It doesn't control here.